IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

DAVID RUSSELL GRIDER )
) Case No: 1:11-CV-11
v. ) COLLIER/CARTER
)
MICHAEL J. ASTRUE, )
    Commissioner of Social Security )

# REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Summary Judgment (Doc. 9) and defendant's Motion for Summary Judgment (Doc. 11) and plaintiff's Reply (Doc. 14).

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

## Plaintiff's Age, Education, and Past Work Experience

Plaintiff was fifty-two years old at the time of the ALJ's decision (Tr. 15, 123, 129). Plaintiff has a ninth grade education (Tr. 154). He previously worked as a security guard, trimmer, clerk, and laborer, along with other positions such as packing and shipping, general labor and janitorial maintenance (Tr. 150).

1

## Applications for Benefits

On September 4, 2007, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and also filed a Title XVI application for supplemental security income. In both applications, Plaintiff alleged he became totally disabled on November 15, 2005 (Tr. 102, 129), due to liver problems, high blood pressure, pancreatitis, kidney disorder, and a left foot injury (Tr. 149). Plaintiff claimed he could no longer walk more than fifty feet without resting because of fatigue and shortness of breath (Tr. 28). After reviewing all of the evidence and testimony, the ALJ found Plaintiff retained the residual functional capacity to perform the full range of light work (Tr. 12, Finding 5). Relying on vocational expert testimony (Tr. 34), the ALJ concluded Plaintiff could perform his past work as a security guard (Tr. 14-15, Finding No 6). Therefore, the ALJ found Plaintiff not disabled (Tr. 15, Finding No. 7).

## Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience.

*Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted). The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After consideration of the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2006.

2. The claimant has not engaged in substantial gainful activity since November 15, 2005, the alleged onset date (20 CFR 404.1571 *et seq*, and 416.971 *et seq*.).

3

3. The claimant has the following severe impairments: pancreatitis; carotid and renal arterial occlusions; and chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he should be able to sit or stand as needed.

6. The claimant is capable of performing past relevant work as a security guard. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2005 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 10-15).

## Issues Presented

Plaintiff seeks remand arguing the decision is internally inconsistent in a material way resulting in a failure to issue a decision in keeping with the law.

## Relevant Facts

**A.     Medical Evidence**

Because the only issue raised is an alleged material inconsistency in the decision, neither Plaintiff nor Defendant points to the medical evidence beyond that necessary to support their arguments. However the ALJ analyzes various aspects of the medical proof as follows:

4

As to the claimant's foot injury, I find that impairment to be non-severe because it does not impose any significant limitations on his ability to perform work-related physical activities. Dr. Thomas Mullady noted the claimant reported a left foot injury several years ago when a forklift ran over his left foot. He states that he did not suffer a fracture but he has continuing pain his left foot with weight bearing. He says that he has intermittent loss of sensation in the entire left foot [10F]. The physical examination showed no peripheral edema. There are no gross joint deformities. Range of motion of all joints is within normal limits. Gait is normal. Muscle strength in all extremities is normal. Grip strength is normal bilaterally, Manual dexterity is normal bilaterally [10F].

As to the claimant's diagnosis of depression, that too is not severe. The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: no restriction of activities of daily living; no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.

Dr. Carol Phillips opined the claimant had no significant clinical symptoms present which require treatment or which would interfere with gainful employment at this time. He has the capacity to understand tasks and instructions. His abilities to display sustained concentration and to be persistent in tasks are not impaired. His ability to be socially appropriate is not impaired. He is further able to react to changing and new situations. His current level of functioning would be successful in an appropriate vocational situation. He has minimal work history. He would benefit from a referral to vocational training. He is clearly not psychotic [8F].

I gave much consideration to the opinion of Dr. Mullady (as it related to the claimant's lower extremity examination and findings) and Dr. Phillips and find their opinions very credible. I gave them each persuasive weight as examining sources because their opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with the other substantial evidence in the claimant's case record. (Social Security Ruling 96-2p) Thus, while Dr. Phillips' assessment was depression, it is clearly not severe because it does not impose any significant limitations on his ability to perform work-related mental activities [8F].

As to a liver disease, no evidence exists to support this; therefore it is not a medically determinable impairment. As to the claimant's hypertension, the evidence shows it is well controlled as long as the claimant is compliant with medication. A Doppler showed 70-90% occlusion of the left internal caratid artery

[14F/20]. The claimant was diagnosed with a COPD exacerbation and carotid stenosis. The claimant was treated and discharged and referred to Dr. Richard Sprouse for likely carotid endarterectomy outpatient [14F/6].

Dr. Sprouse examined the claimant and opined the claimant had an occluded right ICA with a high-grade left carotid stenosis. His recommendation was to continue his aspirin and Plavix. Dr. Sprouse opined that at this point he would not recommend stent placement for a 50-year-old gentleman. There will be some issue with getting him scheduled in the hospital since he has no insurance [15F/2]. In December 2007, a renovascular ultrasound demonstrated a renal artery occlusion but no treatment was recommended other than aspirin and Plavix [16F].

. . . .

January 26, 2006, the claimant presented to the ER at Parkridge Hospital. He presented with chest pain, acute pancreatitis, alcohol abuse and hypertension. He was hospitalized for 2 days and his discharge diagnosis was pancreatitis. His hypertension and pancreatitis was stable and he was released in good condition [6F].

On May 4, 2006, the claimant presented to Parkridge again with acute pancreatitis. Dr. Tricia Scheuneman advised the claimant to avoid alcohol as it would aggravate the condition and possibly cause a recurrence. The claimant understood the instructions and agreed according to the discharge summary [7F/3].

. . .

Dr. Mullady opined the claimant retains the capacity to occasionally lift and/or carry for up to 1/3 of an eight hour workday a maximum of 10 pounds. He would be able to frequently lift and/or carry from 1/3 to 2/3 of an eight hour workday a maximum of less than ten pounds. He would be able to stand and/or walk with normal breaks for a total of at least two hours in an eight hour workday and would be able to sit with normal breaks for a total of about six hours in an eight hour workday [10F].

The next medical record in time is one year later, on August 13, 2007 almost a year after the claimant's date last insured [14F]. The claimant presented to Memorial Hospital with COPD and shortness of breath. A pulmonary test showed only mild obstruction [14F/26]. A CT of the abdomen was consistent with pancreatitis [14F/24]. A CT of the chest was essentially normal [14F/22].

Medical evidence from Memorial Hospital in February 2008 shows the claimant was discharged from Dr. Myers (who he was referred to for arthrosclerosis) due to

6

marijuana use [18F/1, also pp 3]. Records from Memorial North Shore are only significant for hypertension which exacerbates when he runs out of medication. The treatment notes also indicate the claimant is still smoking [21F]. He is otherwise in good health. There are no more medical records to support the claimant's claim that he is disabled.

Tr. 10-13.

The record also includes the opinions of three State Agency Physicians who gave an opinion of Plaintiff's residual functional capacity. In an August 21, 2006 Residual Functional Capacity Assessment, Dr. Richard D. Carter, a State Agency Physician reviewed the record and opined Plaintiff was capable of medium work (Tr. 372-378). In a January 18, 2008 Residual Functional Capacity Assessment, Dr. Lina B. Caldwell, a State Agency Physician reviewed the record and opined Plaintiff capable of light work (Tr. 428-435). Finally, in an April 16, 2008 Assessment a medical consultant with initials RWR, after a review of the record, opined Plaintiff capable of medium work.

## Analysis

Plaintiff argues remand is necessary because the decision is internally inconsistent in a material way resulting in a failure to issue a decision in keeping with the law. He points to two determinations from the same medical examining source, Dr. Mullady. He concludes the following findings are materially inconsistent:

> I gave much consideration to the opinion of Dr. Mullady (as it related to the claimant's lower extremity examination and findings) and Dr. Phillips and find their opinions very credible. I gave them each persuasive weight as examining sources because their opinions are well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with the other substantial evidence in the claimant's case record. (Social Security Ruling 96-2p).

Tr. 11.

7

Case 1:11-cv-00011-CLC-WBC   Document 15   Filed 10/14/11   Page 7 of 11   PageID #: 56

And then in another portion of his opinion:

> As to Dr. Mullady's opinion that the claimant was limited to sedentary work activity, I find no support for this opinion and give it little weight. Dr. Mullady's examination was totally within normal limits so there is nothing to support that the claimant should be limited to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently or the limitation that he can sit for about 6 hours in an 8-hour workday and he is able to stand and/or walk for about 2 hours in an 8-hour workday. As already discussed, the claimant has no left foot limitation and no disorders of the back, etc. Even if he had these disorders coupled with his other disorders, the claimant himself admits he carries the garbage out [3E], does yard work [3E], does household chores [3E], takes care of his dog [lOE], cook eggs, sausage, biscuits, vegetable and meat [lOE], sweep and vacuum [lOE], visit other people once or twice a week [lOE], play cards, read and watch television [IOE], do laundry and clean [15E], perform small repairs [15E], pay bills [15E], count change [15E] and handle a checking and savings account [15E].

Tr. 13-14.

I agree with the Commissioner that the ALJ's decision does not contain the inconsistency that Plaintiff claims because I conclude he gave reasons for his assessment of the different portions of his report. The ALJ did find part of the opinion well supported and another part not well supported. The ALJ adopted Dr. Mullady's assessment of Plaintiff's "lower extremity examination and findings" (Tr. 11, 369), while finding that Dr. Mullady's opinion regarding Plaintiff's ability to lift and stand was entitled to little weight (Tr. 13, 370). In August 2006, Plaintiff underwent the consultative examination with Dr. Mullady (Tr. 368). During the exam, Dr. Mullady noted that Plaintiff complained of a left foot injury affecting his functioning (Tr. 368). However, Dr. Mullady noted Plaintiff had "no gross joint deformities. Range of motion of all other joints was within normal limits. Gait was normal. Muscle strength in all extremities

was normal." (Tr. 369). Dr. Mullady concluded Plaintiff had no limitations stemming from the alleged foot injury (Tr. 369).

The ALJ evaluated this portion of Dr. Mullady's report when he determined Plaintiff had no limitations stemming from his alleged foot injury (Tr. 10-11). The ALJ observed that Dr. Mullady reported Plaintiff's complaints but noted, "The physical examination showed no peripheral edema. There were no gross joint deformities. Range of motion of all joints was within normal limits. Gait was normal. Muscle strength in all extremities was normal." (Tr. 10)(citing Tr. 369). The ALJ then decided that this portion of Dr. Mullady's report "as it related to [Plaintiff's] lower extremity examination and findings" was very credible (Tr. 11). He gave this portion of the report great weight when he found Plaintiff had no limitations stemming from his left foot injury.

At the conclusion of his report, Dr. Mullady opined that due to Plaintiff's "lack of energy and decreased stamina" he was limited to lifting and carrying ten pounds occasionally and less than ten pounds frequently; standing and walking for two hours in an eight-hour day; and sitting for six hours in an eight-hour day (Tr. 370). The ALJ considered this opinion when he evaluated Plaintiff's limitations stemming from his severe impairments (Tr. 13). The ALJ noted the functional limitations about which Dr. Mullady opined (Tr. 13)(quoting Tr. 370), and found the limitations were entitled to little weight because they were inconsistent with Dr. Mullady's own examination, with Plaintiff's daily activities, and with other medical evidence. The other medical evidence specifically included the latest residual functional capacity assessment of a State Agency Physician who opined Plaintiff was capable of light work (Tr. 13-14 and 450). The ALJ chose to mention only this State Agency Physician's opinion apparently because it was the latest of the State Agency opinions. However, I note that there are two other RFC opinions in

9

the record, not referred to, which could provide further support for his conclusion. In an August 21, 2006, Residual Functional Capacity Assessment, Dr. Richard D. Carter, a State Agency Physician reviewed the record and opined Plaintiff was capable of medium work (Tr. 372-378). In a January 18, 2008, Residual Functional Capacity Assessment, Dr. Lina B. Caldwell, a State Agency Physician, reviewed the record and opined Plaintiff capable of light work (Tr. 428-435).

Despite Plaintiff's argument that it is confusing as to what weight the ALJ gave to Dr. Mullady's opinion, Pl.'s Br. at 4-5, a review of the ALJ's decision shows the ALJ granted Dr. Mullady's report great weight in respect to Plaintiff's *lower extremity examination* but found the functional limitations in his opinion were not supported by the record. The ALJ clearly cited to the relevant portion of Dr. Mullady's report he was discussing (Tr. 10-11, 13-14). The ALJ then fully discussed what weight he gave to that portion of the report (Tr. 10-11, 13-14). Consequently, the ALJ clearly addressed Dr. Mullady's opinion and properly articulated why he found Plaintiff not disabled. Although Plaintiff does not specifically challenge the ALJ's evaluation but rather contends there is an internal inconsistency requiring remand, I conclude there is substantial evidence to support the conclusion of the ALJ and that the ALJ adequately explained why he agreed with part of the doctor's report and disagreed with another part.

<u>Conclusion</u>

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 11) be GRANTED, and plaintiff's Motion for Summary Judgment (Doc. 9) be DENIED.[1]

*s/William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. <u>Thomas v. Arn</u>, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. <u>Mira v. Marshall</u>, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. <u>Smith v. Detroit Federation of Teachers</u>, 829 F.2d 1370 (6th Cir. 1987).